UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                         |   |                                      |
|-----------------------------------------|---|--------------------------------------|
| **GAYLE MCKENNON**  Plaintiff, v.  **ARTEES ISLAND DESIGNS, LLC**  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No.: 05-CV-11416-RGS** |

### ASSENTED TO MOTION FOR LEAVE TO FILE REPLY TO ARTEES OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Gayle McKennon hereby requests leave to file the Reply Memorandum in Further Support of Her Motion for Preliminary Injunction (the "Reply"), that is attached hereto as Exhibit A. In support of her motion, Ms. McKennon states that on July 5, 2005, she filed a motion for a preliminary injunction and a complaint. On July 21, 2005, arTees Island Designs, LLC ("arTees") filed an opposition brief that raised new matters (the "Opposition"). arTees assents to the motion for leave to file a reply. Ms. McKennon respectfully requests leave to file her Reply in order to address the new matters raised in the Opposition, and to assist the Court in resolving the parties' dispute.

**WHEREFORE**, Gayle McKennon respectfully requests that the Court grant her leave to file her Reply, and requests that the memorandum of law attached hereto at Exhibit A be deemed filed upon the granting of this motion.

Respectfully submitted,

| | |
|---|---|
| **ARTEES ISLAND DESIGNS, LLC**<br>By its attorney, | **GAYLE MCKENNON**<br>By her attorneys, |
| /s/ David W. Skinner<br>David W. Skinner (BBO# 654993)<br>257 Blue Hills Parkway<br>Milton, MA 02186-1542<br>(617) 322-1607 | /s/ Nancy M. Cremins<br>Kathleen M. Porter (BBO# 632606)<br>John R. Bauer (BBO# 630742)<br>Nancy M. Cremins (BBO# 658932)<br>**ROBINSON & COLE LLP**<br>One Boston Place, 25th Floor<br>Boston, MA  02108-4404<br>(617) 557-5900 |

Dated: July 28, 2005

# EXHIBIT A

Case 1:05-cv-11416-RGS    Document 7-2    Filed 07/28/2005    Page 1 of 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GAYLE MCKENNON<br>       Plaintiff,<br>v.<br>ARTEES ISLAND DESIGNS, LLC<br>       Defendant. | Civil Action No.: 05-CV-11416-RGS |

## GAYLE MCKENNON'S PROPOSED REPLY TO ARTEES' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

In its Opposition to Ms. McKennon's Motion for Preliminary Injunction, arTees offers only two reasons why its continued use of Ms. McKennon's "Clownfish" and "Rhododendron" designs does not constitute copyright infringement and why this Court should not grant the Motion. First, arTees asserts Ms. McKennon orally granted arTees a perpetual, paid-in-full, royalty-free license to use the designs. arTees' argument is factually false and fails as a matter of law, because the alleged perpetual license would be barred under the Statute of Frauds. Second, arTees alleges that it is the joint author of the two designs and as such co-owns the copyrights in those designs. In fact, even if the Court accepts arTees assertions about its contributions to the two designs, those contributions do not warrant a finding that arTees was a joint author of either design. Because arTees' arguments fail as a matter of law, Ms. McKennon respectfully requests that this Court grant her Motion for Preliminary Injunction.

## ARGUMENT

A.  **THE ALLEGED ORAL PERPETUAL LICENSE VIOLATES THE STATUTE OF FRAUDS.**

arTees contends that Ms. McKennon orally granted it a "perpetual, paid-up, royalty-free license" to use dozens of Ms. McKennon's designs, including the two at issue in this suit. arTees Opposition, p. 2. Even if Ms. McKennon made such an agreement – which she did not – such an oral agreement would be unenforceable under the Statute of Frauds.

The Statute of Frauds precludes enforcement of an oral "agreement that is not to be performed within one year from the making thereof" unless that agreement is in writing. M.G.L. c. 259, § 1. arTees' alleged "perpetual" license, which Ms. McKennon vehemently denies (Affidavit of Gayle McKennon ("McKennon Aff."), ¶6, attached hereto as Exhibit B), clearly cannot be performed within one year and thus is unenforceable. See Myers v. Waverly Fabrics, 475 N.Y.S.2d 860 (App. Div. 1st Dept. 1984)(agreement in perpetuity could not be performed in one year and found to violate Statute of Frauds); see also Richard Tucker Associates, Inc. v. Smith, 395 Mass. 648, 650 (1985)(contract not capable of full performance within one year falls within the Statute of Frauds and is unenforceable).

Accordingly, even if Ms. McKennon had orally granted a perpetual license, that license would be unenforceable pursuant to the Statute of Frauds.

B.  **ARTEES WAS NOT A JOINT AUTHOR OF THE TWO DESIGNS.**

arTees contends that it is the joint author of the "Clownfish" and "Rhododendron." Opposition, p. 11-12. In fact, arTees provides evidence of its alleged contributions to "Clownfish" and provides no evidence of any contribution to "Rhododendron." However, even if the Court were to accept arTees' assertions about its contributions to "Clownfish" those contributions would not warrant a finding that arTees was a joint author.

2

A joint work is defined by Section 201(a) of the Copyright Act as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or independent parts of a unitary whole." The fundamental nature of joint authorship is a joint laboring in furtherance of a preconcerted common design. 1 Nimmer on Copyright, §6.03, 6-7 (2005).

For joint authorship to exist, both parties must have intended at the time of creation that the work be jointly owned and that each party's individual contribution must be independently copyrightable. Design Options, Inc. v. BellePointe, Inc., 940 F. Supp. 86, 90 (S.D.N.Y. 1996), citing Childress v. Taylor, 945 F.2d 500, 505-508 (2d Cir. 1991). Ms. McKennon did not intend that either design be jointly owned. McKennon Aff., ¶8. Moreover, arTees' conduct demonstrates that it also did not intend to be a joint author of either design. Further, even accepting arTees' assertions about its contributions, arTees made only *de minimis* contributions to "Clownfish" by making general suggestions, which are not independently copyrightable. Id., ¶5. As such, arTees' claim of joint authorship must fail.

arTees presents no evidence of any contributions its employees and/or agents made to "Rhododendron." In Fact, for "Rhododendron" Ms. McKennon traveled to Heritage Plantation on her own to take photographs and to get ideas for potential artwork. Id. During this trip, Ms. McKennon studied and took photographs of rhododendrons in bloom at Heritage Plantation, which provided reference for her painting "Rhododendron." Id. She presented "Rhododendron" to arTees in completed sketch form. Id.

arTees claims that its employees and/or agents made the following contributions to "Clownfish": provided Ms. McKennon with images of clownfish, provided descriptions of their environment, and requested the brightness of the color desired and number of fish desired in the

3

design. See, Affidavit of Leslie Gayner, ¶6. In fact, "Clownfish" was Ms. McKennon's idea. Id., ¶5. She proposed the idea to arTees as a result of the Walt Disney/Pixar film *Finding Nemo*.[1] Id. Ms. McKennon conducted her own research on clownfish to ensure that her painting was an accurate representation of the fish. Id. arTees' contribution to this work was to request that Ms. McKennon make the color of the fish "brighter" and change the number of fish in the painting. Id. Neither "Rhododendron" nor "Clownfish" is a product of joint laboring in furtherance of a preconcerted common design. Rather, each design was Ms. McKennon's sole work.

In support of its argument of joint authorship, arTees cites to factors in Community for Creative Non-Violence v. Reid, 846 F.2d 1485 (D.C. Cir. 1988), which the court found to undermine sole-authorship. The factors in Reid which support a finding of joint authorship are not present in this case. In Reid, a sculptor claimed sole-authorship of a work. The idea to be expressed in the work was "homeless people huddled on a street-side steam grate." Community for Creative Non-Violence v. Reid, 652 F.Supp. 1453, 1454 (Dist. D.C. 1987). CCNV members conceived the idea for the nature of the display in starkly specific detail, including changing the posture of the sculptures and use of a shopping cart in the sculpture. Id. at 1455-56. Further, the sculptor did not create the special effects pedestal designed to simulate the steam grate. Reid, 846 F.2d at 1495. Finally, the sculptor constructed the figures to be affixed to the steam grate as part of the completed work. Id. The control, direction and integration of artistic elements from separate sources found in Reid are not present in this case.

In Meltzer v. Zoller, 520 F. Supp. 847 (D.N.J. 1981), the court found that a homeowner who consulted with an architectural firm in designing a home was not a joint author of the plans. The court acknowledged that the homeowner prepared sketches illustrating in some detail

---

[1] *Finding Nemo* is an animated full feature film that was released in 2003 by Walt Disney/Pixar, which featured an animated clownfish in the title role.

4

features of the house that he and his wife required and presented such sketches to the architect. The court further acknowledged that throughout the evolution of the plans, the homeowner contributed ideas, made changes, and exercised approval power. The court nevertheless concluded that the architectural firm was the creator of the plans and that the architectural firm designed the plans and contributed most of the ideas contained therein. Id. The court held that to find the plans were a joint work "would be a fiction here, since the plaintiff's failure to have 'created' or 'prepared' the work within the meaning of [17 U.S.C. §101] bars his asserting a copyright interest even as a joint author of the plans." Id. at 857.

The *de minimis* contributions of arTees to the two designs are similar to those of the homeowner in Meltzer. arTees made certain broad suggestions with respect to Ms. McKennon's designs. However, arTees' suggestions of ideas for themes or colors do not rise to the requisite level to qualify as a joint author. Design Options, 940 F. Supp. at 90 (clothing wholesaler's suggestions as to themes, trims, and colors for designer's sweaters did not qualify wholesaler as joint author of sweaters). "[T]he creator of a copyrightable work does not 'so easily acquire a joint author' based on suggestions of ideas and 'minor bits of expression.'" Id., citing Childress, 945 F.2d at 509.

Moreover, arTees' conduct belies any claim to joint authorship of either design. First, only Ms. McKennon signed the two designs to represent herself as sole author of the work. See Weissmann v. Freeman, 868 F.2d 1313, 1320 (2d. Cir 1989)(party's use of just her own name on the byline of the article constituted *prima facie* proof that the work was not intended to be joint). If arTees had intended to be a joint author with Ms. McKennon, it would not have permitted, and certainly would not have offered to allow Ms. McKennon to sign the Artwork that she submitted for arTees' use. McKennon Aff., ¶7.

5

Second, if arTees intended to be a viewed itself as joint author of the two designs, it would have not paid Ms. McKennon a licensing fee for the designs since a joint author "automatically acquires an undivided ownership in the entire work." Weissman, 868 F.2d at 1318. If arTees believed it had an undivided ownership in the entire work, it would not have paid Ms. McKennon for a license agreement because a joint author can use or license any portion of the joint work without infringing its copyright. Morrill v. Smashing Pumpkins, 157 F.Supp.2d 1120, 1126 (C.D.Cal. 2001). arTees' payments to Ms. McKennon to license the designs clearly demonstrates arTees did not intend to be and therefore is not a joint author of the designs.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Ms. McKennon's opening brief, the court should allow Ms. McKennon's Motion for Preliminary Injunction.

Respectfully submitted,
**GAYLE MCKENNON**
By her attorneys,


/s/ Nancy M. Cremins
Kathleen M. Porter (BBO# 632606)
John R. Bauer (BBO# 630742)
Nancy M. Cremins (BBO# 658932)
**ROBINSON & COLE LLP**
One Boston Place, 25th Floor
Boston, MA  02108-4404
(617) 557-5900

Dated: July 28, 2005

# EXHIBIT B

Case 1:05-cv-11416-RGS    Document 7-3    Filed 07/28/2005    Page 1 of 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **GAYLE MCKENNON** )<br>          **Plaintiff,** )<br>v. )<br> )<br>**ARTEES ISLAND DESIGNS, LLC** )<br>          **Defendant.** ) | **Civil Action No.: 05-CV-11416-RGS** |

### AFFIDAVIT OF GAYLE MCKENNON

I, Gayle McKennon, being duly sworn, do hereby depose and state as follows:

1. I have personal knowledge of the matters set forth in this affidavit, except for those matters known to me on information and belief, and, as to those, I believe them to be true and accurate.

2. I submit this Affidavit in support of Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction.

3. I have reviewed the Affidavits of Leslie Gayner and Stephen Gayner in support of arTees' Opposition to Plaintiff's Motion for Preliminary Injunction. Those affidavits contain inaccuracies and omit relevant facts.

4. In 2002, I traveled to Heritage Plantation on my own to take photographs and to get ideas for potential artwork. During this trip, I studied and took photographs of rhododendrons in bloom. This trip provided reference for my painting of "Rhododendron." I was not compensated by arTees for my travel, for the time I spent at Heritage Plantation or for the time I spent sketching "Rhododendron." On or about July 23, 2002, I provided arTees with a license

to apply my "Rhododendron" design to garments and to sell and offer to sell garments incorporating the design.

5. "Clownfish" was an idea that I proposed to arTees in 2003 because of the popularity and success of the film *Finding Nemo*, which was released in 2003. To prepare the painting, I watched *Finding Nemo* and observed still frames to get ideas for the painting. I also did additional research on Clownfish to ensure that the painting was an accurate representation of clownfish. While arTees made some minimal suggestions regarding "Clownfish," those suggestions were limited to requesting that the color be "brighter" and that I add or subtract fish in the painting. On or about December 15, 2003, I provided arTees with a license to apply my "Clownfish" design to garments and to sell and offer to sell garments incorporating the design.

6. At no time did I orally grant arTees a perpetual, paid-in-full, royalty-free license to use my artwork. In fact, I requested a written contract with arTees on multiple occasions, even going so far as to provide them with books on licensing agreements with artists. I did not learn until recently that Ms. Gayner was a contracts administrator in a prior job and would have been readily able to draft a contract if she so chose.

7. arTees proposed that I sign the Artwork that I submitted for its use. Contrary to Ms. Gayner's suggestion, I did not make that request, nor was it "the only thing that I asked for."

8. At no time did I intend any of my designs to be jointly owned.

Signed under the pains and penalties of perjury this 28th day of July, 2005.

_____
Gayle McKennon

2