UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GAYLE MCKENNON,<br>            Plaintiff,<br><br>v.<br><br>ARTEES ISLAND DESIGNS, LLC,<br>            Defendant | )<br>)<br>)<br>)<br>)  Civil Action No.: 05-CV-11416<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT'S MOTION FOR LEAVE TO FILE ASSENTED-TO SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION & IMPOUNDMENT

The Defendant in the above captioned matter, arTees Island Designs, LLC, requests leave from the Court to file the following Supplemental Opposition Memorandum in further opposition to Plaintiff's motion for preliminary injunction and impoundment. In support of this motion for leave from the Court so to file, arTees states that:

- on July 7, 2005, the Plaintiff filed a motion for preliminary injunction;
- on July 21, 2005, the Defendant filed an Opposition Memorandum;
- on July 28, 2005, Plaintiff filed a Reply to that opposition; and
- Plaintiff's reply raised new matters.

arTees respectfully requests leave of the Court to file its Supplemental Opposition Memorandum to respond to the new matters raised in Plaintiff's reply, and to assist the Court in resolving the dispute between the parties.

Plaintiff's counsel assents to the Defendant filing its Supplemental Opposition.

Wherefore, arTees Island Designs, LLC respectfully requests that the Court grant it leave to file its Supplemental Opposition, and requests that the memorandum attached hereto as Appendix 1 be deemed filed on the granting of this motion.

Respectfully submitted on August 2, 2005,

| Attorneys for Gayle McKennon | Attorney for arTees Island Designs, LLC |
|---|---|
| /S/ Kathleen M. Porter | /S/ David W. Skinner |
| Kathleen M. Porter (BBO # 632606) | David W. Skinner (BBO # 654993) |
| John R. Bauer (BBO #630742) | 257 Blue Hills Parkway |
| Nancy M. Cremins (BBO # 658932) | Milton, MA 02186-1542 |
| Robinson & Cole, LLP | 617-322-1607 |
| One Boston Place, 25th Floor | |
| Boston, MA 02108-4404 | |
| 617-557-5900 | |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| GAYLE MCKENNON, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No.: 05-CV-11416 | |
| ) | | |
| ARTEES ISLAND DESIGNS, LLC, ) | | |
| Defendant ) | | |
| ) | | |

ARTEES ISLAND DESIGNS, LLC
SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND IMPOUNDMENT

The Defendant in the above captioned matter, arTees Island Designs, LLC, submits this memorandum in response to Plaintiff's reply to Defendant's opposition to Plaintiff's motion for preliminary injunction and impoundment.

INTRODUCTION

Demonstrating a likelihood of success on the merits in the copyright infringement action is required in order for the Plaintiff, Ms. McKennon, to obtain the requested preliminary injunction and impoundment. The Defendant, arTees, has raised serious issues going to Plaintiff's assertions of sole ownership of the copyright and unauthorized copying by the Defendant. In its Reply to Defendant's Opposition, the Plaintiff counters by arguing an interpretation of the joint authorship doctrine that is different from the plain language of the statute and not the law of this circuit; and by asserting that arTees did not have valid license to the artwork at bar because the Statute of Frauds prevents arTees from claiming a perpetual, paid-up, royalty-free license granted by the Plaintiff. At first blush, the Statute of Frauds argument

1

appears substantial, so it will be addressed first and conclusively. However, even though the Statute of Frauds claim is readily defeated, the express license is not the only basis for arTees to claim valid license to use these images.

Because arTees will show it has valid license to use the artwork at issue and a colorable claim to joint authorship in the designs, the Plaintiff has not established a likelihood of success on the merits, and arTees respectfully requests that this Court deny the Plaintiff's motion for preliminary injunction and impoundment.

ARGUMENT

A.     The Defendant Did Have Valid License to Use the Works at Issue.

1.     The Oral License Does Not Violate the Statute of Frauds

Plaintiff argues that the oral contract between the parties clearly cannot be performed within a year and is therefore unenforceable under M.G.L. c. 259, § 1. Plaintiff's assertion fails for at least two reasons:

1. The contract could be and was completed within one year; and

2. Writings signed by the Plaintiff exist, which, taken with memoranda submitted in this litigation, work an acknowledgement of the oral agreement, and so the Plaintiff cannot plead the Statute of Frauds in bar of the agreement.

1.1    The Contract Was Completed Within One Year

Plaintiff's reliance on the New York State case of <u>Myers v. Waverly Fabrics</u>, 475 N.Y.S.2d 860 (N.Y. App. Div. 1984) for the proposition that a perpetual copyright license violates the statute of frauds is misplaced. In <u>Myers</u>, the author of fabric designs was prevented from stating a breach of contract claim based on an violation of an alleged perpetual oral restriction on how the defendant could use her work, a restriction she claims was in the oral

license she granted, because the oral restriction failed to satisfy the statute of frauds. Id. at 861-2, affirmed as to this point by 65 N.Y.2d 75, 78-9 (1985), modified as to another. Neither the Appellate Division nor the New York Court of Appeals held that the orally granted nonexclusive license itself failed to satisfy the New York Statute of Frauds, only that the breach of contract action over the oral restriction could not survive the defense.

The Plaintiff misapprehends the nature of the performances required by the contracts at issue. arTees' performance was to commission Ms. McKennon, to work with her throughout the design process, to approve the final result, and to pay Ms. McKennon the negotiated price for the purchase of the original artwork and the license to use the design in arTees' business. Ms. McKennon's performance, once she accepted a commission, was to prepare sketches, work with arTees on conforming her designs to arTees' specifications, prepare the final painting when the design was approved, and, finally, present the painting to arTees, and grant arTees the license to use the design in its business in exchange for the price. Upon this exchange, the performances were complete.

Although a license can be considered "a form of a contract in the sense that it is 'in legal contemplation, merely an agreement not to sue the licensee for infringement,'" Lulirama Ltd. v. Axcess Broadcast Servs., 128 F.3d 875, 882 (5th Cir. 1997), quoting Professor Nimmer, that is simply a way of thinking of that which the licensor sells. Closer to home for this case, the First Circuit has held that "Uses of the copyrighted work that stay within the scope of a nonexclusive license are immunized from infringement suits." Danielson v. Winchester-Conant Properties,

Inc., 322 F.3d 26, 41 (1st Cir. 2003).[1] arTees employed the designs at all times within the scope of the license granted it by the Defendant.[2]

The First Circuit in Danielson refers to the Second Circuit case of Graham v. James, 144 F.3d 299 (2d Cir 1998) for the proposition that the grant of a nonexclusive license to use copyrighted material waives the copyright owner's right to sue the licensee for copyright infringement. Id. at 236, and cases cited. Accord Effects Associates v. Cohen, 908 F.2d 555, 559 (9th Cir. 1990) ("Copyright ownership is comprised of a bundle of rights; in granting a nonexclusive license to Cohen, Effects has given up only one stick from that bundle — the right to sue Cohen for copyright infringement. It retains the right to sue him in state court on a variety of other grounds, including breach of contract.")

The circuit courts' descriptions of the licensing transaction as giving up or waiving a right and immunizing the licensee clearly indicate that these events occur on the granting of the license and that no further performance or forbearance on the part of the copyright holder is

---

[1] arTees is not at this time claiming that Ms. McKennon transferred the copyright entirely or that she granted arTees an exclusive license to the designs; a nonexclusive license will defeat the instant copyright infringement action.

[2] The Plaintiff contends that she terminated the license granted to arTees by letter dated 12/23/2004. While resort to rescission was sufficiently briefed previously, it should be mentioned that nonexclusive licenses supported by consideration are irrevocable. As explained in Graham v. James, 144 F.3d 229, 236-37(2d Cir. 1998), the ability to sue a licensee for infringement arises only on failure of some condition precedent to the license grant. In that event, no rights under a license actually ripened and copyright infringement suit may properly issue. That is not this case; no condition precedent to the instant license grant was unsatisfied. Moreover, once consideration has been paid for a license, breach of a covenant undertaken by the licensee (as the alleged obligation in this case to return of the original art to the Plaintiff) gives rise to a cause of action for breach of contract, not copyright infringement.

The copyright owner holds no unilateral right to terminate a license grant once consideration has been paid. See also Lulirama Ltd. v. Axcess Broadcast Servs., 128 F.3d 872, 882-83 (5th Cir. 1997). Accordingly, Plaintiff should not be heard to argue that her unilateral license revocation rendered all uses by Defendant infringing as outside the scope of the license.

required. The oral contracts at bar were complete, fully performed and in no way executory following Ms. McKennon handing over the paintings and the licenses in exchange for payment from arTees. Accordingly, these oral licensing agreements were in fact completed within a year, and, therefore, are not unenforceable under the Massachusetts Statute of Frauds.[3]

1.2     Memoranda Signed by Ms. McKennon Exist to Satisfy the Statute of Frauds

Ms. McKennon submitted the invoices for the Clownfish and Rhododendron designs with her motion. These invoices are on the Plaintiff's letterhead, identify arTees as the purchaser, identify the object of the sales, recite the consideration paid by arTees, and include the Plaintiff's first name signed by her own hand.

The Clownfish invoice references the oral agreement but makes no mention of the license granted by Ms. McKennon to arTees. ("FOR: Art services rendered as per oral contract: 'Clownfish', in full watercolor.") In contrast, the Rhododendron invoice references both the agreement and the license explicitly granted. ("For: 'Rhododendron', in watercolor; as per agreement, for use as silk-screened images an [sic] garments and other related uses.")

Appended to Defendant's answer to the complaint in this matter are the thirty-eight invoices against which it paid Ms. McKennon for the purchase of her original artwork and of the license to use those designs in its business. arTees expects to develop further proof during discovery, and intends to argue that these invoices and other proofs, taken together, flesh out the course of dealing between these parties, demonstrating not only that licenses were, in fact, granted, but also that Ms. McKennon sold the original artwork outright to arTees.

---

[3] In Rowland v. Hackel, 243 Mass. 160, 162 (1922), the Supreme Judicial Court held that the Statute of Frauds can be avoided if the contract could be fully performed before the end of one year by the corporate party thereto going out of business. While that is not an appealing solution for the Defendant to contemplate, it does provide an interesting theoretical alternative solution to the Statute of Frauds defense raised by the Plaintiff.

5

In addition, several times already in the course of this litigation, Ms. McKennon has clearly acknowledged the granting of the licenses at bar: July 1, 2005 McKennon Aff. ¶¶ 7-9; Complaint ¶¶ 10, 11, 22; Motion for Preliminary Injunction p. 2.

In accordance with Pitts v. Halifax Country Club, Inc., 19 Mass. App. Ct. 525, 532 (1985), the Defendant, rather than the Plaintiff, might be able to shield itself from enforcement of the oral contract at bar under the Statute of Frauds.  However, the signed invoices contain adequate detail that they, together with the sworn statements of Ms. McKennon admitting to the licenses, make out sufficient memoranda that Ms. McKennon can not now plead the Statute of Frauds in bar of the agreement.  Id. at 532 n.9, appeal denied, 394 Mass. 1104 (1985) (A party who has acknowledged an agreement sufficiently to satisfy the Statute of Frauds may not shield itself from the agreement with the statute, even if the opposing party could.)[4]

2.     Even Without the Express License, the Defendant Held an Implied-In-Fact License[5]

It is well settled that a copyright owner may grant exclusive licenses only with a writing which satisfies the Copyright Act's Statute of Frauds, 17 U.S.C, § 204(a), but this writing requirement does not apply to nonexclusive licenses which do not involve transfer of copyright

---

[4] In Williams v. Pittsfield Lime & Stone Co., 258 Mass. 65, 69 (1927), the Supreme Judicial Court held that Williams was bound to his sworn statement which provided the essential fact barring the contract in that case under the statute of frauds; it was not a fact in dispute to be submitted to the jury.  It follows that, in this case, Ms. McKennon's sworn statements which might serve to rescue the oral license at bar (if rescue were required) are also binding.

[5] In its Opposition Memorandum, when discussing the license revocation letter from the Plaintiff, the Defendant stated parenthetically that it was not claiming an implied license.  However, it has become clear that, even though arTees is confident that an express license was granted and remains valid, an implied license was, as a matter of law, granted as well.  (As Ms. McKennon purported to terminate an implied license with the 12/23/04 letter from her attorneys to the Defendant, she, too, apparently felt this implied license existed.)  Accordingly, as the court has yet to consider the instant motion, arTees wishes to clarify it's earlier aside to explain that it meant it was not claiming an implied license in that paper, not that it had waived such a claim in this case.

ownership, see Id. § 101. Nonexclusive licenses may be granted orally, or impliedly: by conduct indicating that the copyright owner intends to allow a licensee to use the work. Danielson v. Winchester-Conant Properties, Inc., 322 F.3d 26, 40 (1st Cir. 2003).

In Danielson, the First Circuit accepted the three part test from Effects Associates, 908 F.2d at 558-59, requiring "that the licensee request the creation of the work, the licensor create and deliver the work, and the licensor intend that the licensee distribute the work." Danielson, 332 F.3d at 41. In this case, the parties each claim to have conceived the idea for an image of clown fish. Even so, it is undisputed that arTees commissioned Ms. McKennon to design both the Clownfish and Rhododendron images for it to use; that she did so design and paint; and that she delivered the designs to arTees for distribution of the images in its screen-printing and embroidery business. While the facts in Danielson prevented a finding of implied license, here an implied license is clear.

Because arTees had an implied nonexclusive license, it is immune from suit by the Plaintiff for copyright infringement within the scope of that license, as discussed above. Danielson, 332 F.3d at 41.

B.    The Defendant Was a Joint Author of the Original Designs and/or of the Derivative Designs Displayed on its Web Site

As arTees discussed in its Opposition, there is a split among the circuits on the application of the joint authorship doctrine. The Plaintiff relies on those circuit court cases which import additional restrictions to the plain language of the Copyright Act, even though that is not the law in this Circuit. The Defendant prefers the language Congress used.

17 U.S.C., § 101 requires that authors of joint works intend that their "contributions be merged into interdependent or inseparable parts of a unitary whole," and does not require that

authors intend the legal consequence of making a joint work, namely co-ownership of the copyright, though some courts have so held in order to constrain this doctrine.

Whether Ms. McKennon intended the copyrights to be co-owned is irrelevant to her intention that the contributions she and arTees put forth be merged into a unitary whole. As she was the one incorporating the creative suggestions, inputs, and demands made by arTees into the whole, it is hard to imagine how she could have intended anything else.

arTees expects that discovery will develop substantial additional facts showing that its contributions were more than de minimis. While arTees did not contribute a pedestal to these pieces of artwork as did the Community for Creative Non-Violence, it has alleged sufficient creative contributions to the artwork at issue that only a fact finder can determine whether joint authorship resulted.

Allowing the Plaintiff to sign the final designs is not dispositive of the intent to make a joint work  A sole signature as prima facie evidence is not an irrebuttable presumption; rather, it shifts the burden to arTees to explain why only one signature should not weigh against a finding of joint work. In this case, the defendant acceded to Ms. McKennon's request to sign her work, as she seemed aggrieved at not having this privilege in other circumstances. LAG Aff.¶ 10. In addition, since arTees sells garments wholesale in custom orders to specific clients, and not retail to the public, it does not use its designs directly to promote its business to casual viewers. Rather, its clients know from whom they are ordering. Lack of an arTees signature proves nothing, and allowing Ms. McKennon to sign her works does not speak to arTees' intention to have its contributions merged into one piece of joint authorship.

Paying Ms. McKennon the agreed-upon price to license the work demonstrates that arTees kept its bargain, not that it acted in a manner inconsistent with considering itself a co-

8

author of the work; the statute does not require an intention to become a co-owner, or an understanding of the consequences of becoming a co-owner of a copyright.[6]

The Defendant also alleges that it made further modifications to Ms. McKennon's designs in processing them for use in its business, that Ms. McKennon knew those derivatives were to be prepared, and both parties intended that Plaintiff's designs would be merged into those derivatives. Accordingly, the derivatives, themselves, may be works of joint authorship, and display of those images on arTees' web site is the infringement of which Plaintiff complains.

Significant factual issues remain for development during discovery in order for the parties to prove at trial whether any of these are joint works. In addition, this Court will determine whether or not it will follow the plain language of the statute, as explicated by the Ninth Circuit in Community for Creative Non-Violence v. Reid, 846 F.2d 1485 (D.C. Cir. 1988) and approved by the Supreme Court in Community for Creative Non-Violence v. Reid, 490 U.S. 730, 753 (1989). Where the statute is clear and derogation from that clarity may be required to find against the Defendant on this issue and the facts are disputed, it cannot be said that the Plaintiff has demonstrated a likelihood of success on the merits as to sole ownership.

The ownership element of the copyright action remains an open question.

## CONCLUSION

arTees holds valid license expressly granted by Ms. McKennon, and enforcement of such license is not barred by the Statute of Frauds. In addition, by operation of law, arTees holds valid implied nonexclusive license to use the artwork in its business. Accordingly, the unauthorized copying element is not clearly satisfied.

---

[6] In addition, Fed. R. Civ. P. 8(e)(2) expressly allows alternate pleadings without any judicial estoppel for inconsistent assertions in a single trial.

As discussed above and in the Opposition Memorandum, sole ownership is called into question by the creative contributions and joint authorship claims of the Defendant.

Because Ms. McKennon has not clearly established two of the necessary elements of her copyright action, she cannot be said to have a likelihood of success on the merits, and so is not entitled to either the preliminary injunction or impoundment.

The Defendant respectfully requests that this Court deny the Plaintiff's motion.


Respectfully submitted on August 2, 2005 by


Attorney for arTees Island Designs, LLC.,

/S/ David W. Skinner
David W. Skinner, BBO # 654993
257 Blue Hills Parkway
Milton, MA 02186-1542
(617) 322-1607


CERTIFICATE OF SERVICE - I hereby certify that a true copy of the above document was served upon the attorney of record for Plaintiff, Gayle McKennon, by electronic filing through the CM/ECF system of the US District Court for the District of Massachusetts on August 2, 2005.


/S/ David W. Skinner
David W. Skinner